**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL RUTTENBERG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>SERVICEMASTER GLOBAL HOLDINGS, INC., NIKHIL M. VARTY, and ANTHONY D. DILUCENTE<br><br>Defendants. | No. 1:20-cv-02976-ER<br><br>Judge Edgardo Ramos<br><br><u>CLASS ACTION</u><br><br><u>ORAL ARGUMENT REQUESTED</u> |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
SCOTT TORPPEY FOR APPOINTMENT AS LEAD PLAINTIFF,
<u>AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND ......................................................................................................2

ARGUMENT ................................................................................................................................6

I.    TORPPEY SHOULD BE APPOINTED LEAD PLAINTIFF ............................................6

    A.    The PSLRA Standard For Appointing Lead Plaintiff.....................................6

    B.    Torppey Is The "Most Adequate Plaintiff"......................................................7

        1.    Torppey's Motion Is Timely ...................................................................7

        2.    Torppey Has the Largest Financial Interest in the Relief Sought by the Class ................................................................................................8

        3.    Torppey Satisfies Rule 23's Typicality and Adequacy Requirements ............................................................................................8

III.    TORPPEY'S SELECTION OF LEAD COUNSEL MERITS APPROVAL .......................10

CONCLUSION............................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bevinal v. Avon Prods., Inc.*,
    No. 19 Civ. 1420 (CM), 2019 WL 2497739 (S.D.N.Y. June 3, 2019) ...................................... 8

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ................................................................................................... 10

*In re Elan Corp. Sec. Litig.*,
    No. 1:08-cv-08761-AKH, 2009 WL 1321167 (S.D.N.Y. May 11, 2009) ................................. 9

*Faig v. Bioscrip, Inc.*,
    No. 13 Civ. 06922 (AJN), 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013) ................................. 9

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) .............................................................................................. 7

*Kemp v. Universal Am. Fin. Corp.*,
    No. 05 Civ. 9883 (JFK), 2006 WL 1190691 (S.D.N.Y. May 1, 2006) ..................................... 8

*Kux-Kardos v. VimpelCom, Ltd.*,
    151 F. Supp. 3d 471 (S.D.N.Y. 2016) ....................................................................................... 8

*McKenna v. Dick's Sporting Goods, Inc*,
    No. 17-CV-3680 (VSB), 2018 WL 1083971 (S.D.N.Y. Feb. 27, 2018) ................................... 8

*Sgalambo v. McKenzie*,
    268 F.R.D. 170 (S.D.N.Y. 2010) .............................................................................................. 9

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
    216 F.R.D. 248 (S.D.N.Y. 2003) ........................................................................................... 8, 9

**Rules & Statutes**

Fed. R. Civ. P. 23 ............................................................................................................... *passim*

15 U.S.C. § 78u-4 *et seq.* ................................................................................................... *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    No. 04-cv-8141 (S.D.N.Y.) ..................................................................................................... 11

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    No. 08-md-1963 (S.D.N.Y.) ................................................................................................... 11

*In re Fannie Mae 2008 Sec. Litig.*,
    No. 08-cv-7831 (S.D.N.Y.) .................................................................................................. 11

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
    No. 09-md-2027 (S.D.N.Y.) ................................................................................................. 11

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ................................ 10

Proposed Lead Plaintiff Scott Torppey ("Torppey") respectfully submits this Memorandum of Law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of his motion for the entry of an Order: (i) appointing Torppey as Lead Plaintiff on behalf of all persons or entities who purchased or otherwise acquired the publicly traded common stock of ServiceMaster between February 26, 2019 and November 4, 2019, both dates inclusive (the "Class Period"); (ii) approving Torppey's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class; and (iii) granting such other and further relief as the Court may deem just and proper.[1]

## PRELIMINARY STATEMENT

Presently pending in this District is a securities class actions brought against ServiceMaster and certain of the Company's current and former executive officers (collectively, "Defendants"), for violations of Sections 10(b) and 20(a) of the Exchange Act. Torppey respectfully submits that he should be appointed Lead Plaintiff on behalf of all investors who purchased or otherwise acquired ServiceMaster common stock during the Class Period, and were damaged as a result of Defendants' alleged fraud (the "Class").

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class, and also whether such movant has made a *prima facie* showing that it is a typical and adequate class

---

[1] Torppey respectfully notes that he is concurrently filing a substantively identical motion in the related case captioned *Teamsters Local 237 Welfare Fund v. ServiceMaster Global Holdings, Inc.*, No. 20-cv-0457 (M.D. Tenn.) (the "*Local 237* Action"), pending in the United States District Court for the Middle District of Tennessee.

representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Torppey incurred a loss of ***$9,244*** on his Class Period transactions in ServiceMaster common stock on a last-in-first-out ("LIFO") basis.[2]  Accordingly, Torppey has a substantial financial interest in directing this litigation and recovering losses attributable to Defendants' alleged violations of federal securities laws—an interest believed to be greater than that of any other qualified movant.

Torppey also meets the typicality and adequacy requirements of Rule 23 because his claims are typical of those of absent Class members, and because he will fairly and adequately represent the interests of the Class.  Accordingly, Torppey is the presumptive Lead Plaintiff.

Finally, pursuant to the PSLRA, Torppey respectfully requests that the Court approve his selection of Labaton Sucharow as Lead Counsel for the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class").  Labaton Sucharow is a nationally recognized securities class action litigation firm that has recovered billions of dollars in damages for defrauded investors.

Accordingly, Torppey respectfully requests that the Court appoint him as Lead Plaintiff for the Class and approve his selection of Lead Counsel.

## FACTUAL BACKGROUND

ServiceMaster is a leading provider of essential services to residential and commercial customers in the termite, pest control, cleaning and restoration markets.  ServiceMaster's largest

---

[2]  A copy of Torppey's Certification is attached as Exhibit A to the Declaration of Francis P. McConville (the "McConville Decl."), filed contemporaneously herewith.  This Certification sets forth all of Torppey's transactions in ServiceMaster common stock.  In addition, a table reflecting the calculation of Torppey's financial losses is attached as Exhibit B to the McConville Decl.

and most profitable business segment is Terminix, a termite and pest control business that primarily operates in the United States. Among other services, Terminix offers an annual coverage plan for its termite customers, which indemnifies the customer against the cost of treatments and repairs.

Relatedly, beginning in the last century, the Formosan termite ("Formosan") was introduced to the United States. Since then, the Formosan has been widely regarded as the most invasive species of termite in America, capable of widespread property damage to homes and other structures in a short period of time. Formosan activity is generally relegated to the Gulf Coast region of America, specifically including Alabama. According to ServiceMaster, Mobile, Alabama, is considered the most at-risk community for Formosan infestation.

Due to the importance of Terminix to ServiceMaster's financial results, ServiceMaster previously underwent a turnover of key management following slowing growth in the Terminix segment in 2017. The new management, Defendants Nikhil M. Varty ("Varty"), ServiceMaster's Chief Executive Officer ("CEO") at all relevant times, and Anthony D. DiLucente ("DiLucente"), ServiceMaster's Chief Financial Officer ("CFO") at all relevant times, were tasked with revitalizing growth in the Terminix segment with a focus on customer service and operations.

During the Class Period, Defendants Varty and DiLucente repeatedly assured the market that ServiceMaster was successfully executing upon the Company's transformation plan for the Terminix segment. In addition, Defendants Varty and DiLucente stated that Terminix would reach a positive "inflection point" and was "definitely the driver" for positive trends expected in the second half of 2019. Unbeknownst to investors, however, over the past several years the Terminix segment had experienced an adverse trend of costly termite litigation, primarily related

to Formosan activity in Mobile, Alabama.  This negative trend, which would ultimately impact ServiceMaster's current and future financial results, was known to Defendants throughout the Class Period, as by their own later admission they had been taking mitigating measures since early 2018.

Therefore, throughout the Class Period, Defendants made materially false and/or misleading statements and omissions.  Specifically, Defendants failed to disclose the following adverse facts pertaining to the Company's business, operations, and financial condition, which were known to or recklessly disregarded by Defendants: (i)ServiceMaster had failed to properly inspect and treat for Formosan activity; (ii) as a result thereof, the Company was and continued to experience a material adverse trend of costly litigation from injured customers which was not disclosed to investors; (iii) in an unsuccessful attempt to mitigate this trend, Defendants had been taking remedial measures since at least 2018, including drastically raising prices for termite treatments in Mobile, Alabama to deter contract renewals; and (iv) as a result of the foregoing, ServiceMaster's financial results were reasonably likely to be impacted, and would continue to impact the Company into 2020.

On October 22, 2019, before the markets opened, ServiceMaster announced disappointing preliminary financial results for the third quarter 2019, having missed revenue and earnings estimates.  Additionally, ServiceMaster reported net income of $25 million versus $71 million during the third quarter of the prior year.  The Company also gave downward adjusted EBITDA guidance of $415 to $425 million, down from $435 to $445 million.  Finally, the Company announced the sudden departure of Matthew J. Stevenson in his role as President of Terminix Residential, effective October 31, 2019.

The press release attributed the disappointing results to "termite damage claims arising primarily from Formosan termite activity," primarily in Mobile, Alabama. The Company further stated that this had been a known issue, having taken mitigating measures since early 2018. Finally, while the press release indicated that the Company's organic revenue growth would offset "a reduction in termite renewals driven partially by managed reductions from price increases in the Formosan termite market of Mobile, Alabama"—contradicting previous statements that the price increases were optional. On this news the price of ServiceMaster common stock fell $11.44 or 20 percent, closing at $44.70 on October 22, 2019, down from its $56.14 closing price on October 21, 2019.

On November 5, 2019, before the start of trading, ServiceMaster released its third quarter 2019 financial results. In this press release discussing the "challenging quarter," the Company revealed that it had been impacted by certain "legacy risks," including "termite damage claims."

That same day, Defendants held an earnings call with analysts and investors to discuss ServiceMaster's third quarter 2019 financial results. On the call, Defendant Varty informed the market that the increase in termite litigation—which occurred "[i]n the past few years"—had impacted termite revenue by 7 to 8 percent, up from the historic impact of termite damage claims of 4 to 4.5 percent. Defendant Varty also stated that the impact of the increased claims would continue to impact the Company throughout 2020, and also disclosed that the price increases in Mobile, Alabama were part of an initiative to "mitigate" termite damage claims. Finally, Defendant DiLucente stated that in addition to the "$2 million increase damage claims expense due to the increase in Formosan termite activity in the Mobile, Alabama area," that the Company "expect[ed] a year-over-year increase from damage claims of approximately $4 million in the fourth quarter."

5

On this news, the price of ServiceMaster common stock fell $1.42, or 3.5 percent to close at $39.15 on November 5, 2019.  As the market continued to digest the disappointing news, ServiceMaster shares continued to decline by $3.41, or 9 percent, closing at $35.74 on November 6, 2019.  All told, following the November 5, 2019 disclosure, ServiceMaster stock suffered a total decline of $4.83 from the November 4, 2019 closing price.

As a result of Defendants false and/or misleading statements and/or omissions, Torppey and the Class have suffered harm under the federal securities laws.

## ARGUMENT

### I.   TORPPEY SHOULD BE APPOINTED LEAD PLAINTIFF

Torppey respectfully submits that he should be appointed Lead Plaintiff because he timely filed the instant motion, believes he has the largest financial interest of any qualified movant, and satisfies the typicality and adequacy requirements of Rule 23.

#### A.   The PSLRA Standard For Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff).  First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, the Court is to consider any motion made by Class members to serve as Lead Plaintiff and appoint the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). In adjudicating the lead plaintiff motions, the Court shall adopt a presumption that the "most adequate plaintiff" is the person who: (i) filed a complaint or timely filed a motion to serve as Lead Plaintiff; (ii) has the largest financial interest in the relief sought by the Class; and (iii) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011). This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Under the framework established by the PSLRA, Torppey is the most adequate plaintiff and should be appointed Lead Plaintiff.

### B.   Torppey Is The "Most Adequate Plaintiff"

#### 1.   Torppey's Motion Is Timely

Torppey filed this motion to serve as Lead Plaintiff in a timely manner. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in the first-filed action against Defendants caused notice regarding the pending nature of this case to be published on *BusinessWire*, a widely-circulated, national, business-oriented news wire service, on April 10, 2020. *See* Notice, McConville Decl., Ex. C. Thus, pursuant to the PSLRA, any person who is a member of the proposed Class may apply to be appointed lead plaintiff within sixty days after publication of the notice, *i.e.*, on or before June 9, 2020. Torppey filed his motion seeking appointment as Lead Plaintiff within this deadline and thus has satisfied the procedural requirements of the PSLRA.

### 2. Torppey Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Kemp v. Universal Am. Fin. Corp.*, No. 05 Civ. 9883 (JFK), 2006 WL 1190691, at *2 (S.D.N.Y. May 1, 2006).

Torppey incurred a substantial loss of **$9,244** on his relevant transactions in ServiceMaster common stock on a LIFO basis during the Class Period. *See* Loss Analysis, McConville Decl., Ex. B. Accordingly, Torppey has a substantial financial interest as a qualified movant seeking Lead Plaintiff status, and is the presumptive "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also McKenna v. Dick's Sporting Goods, Inc*, No. 17-CV-3680 (VSB), 2018 WL 1083971, at *4–5 (S.D.N.Y. Feb. 27, 2018) (finding the movant with the largest financial interest to be the "presumptive lead plaintiff").

### 3. Torppey Satisfies Rule 23's Typicality and Adequacy Requirements

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See Bevinal v. Avon Prods., Inc.*, No. 19 Civ. 1420 (CM), 2019 WL 2497739, at *1 (S.D.N.Y. June 3, 2019). At the lead plaintiff selection stage, all that is required to satisfy Rule 23 is a preliminary showing that the lead plaintiff's claims are typical and adequate. *See Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 477 (S.D.N.Y. 2016); *see also Gridsum Holding Inc.*, 2018 WL 4462363, at *4 (citation omitted) ("[A]t this stage of the litigation, a moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.") (citation omitted); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) ("The moving plaintiff must

make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met."). Here, Torppey unquestionably satisfies both requirements.

### (a) Torppey's Claims Are Typical of Those of the Class

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability. *See Sgalambo v. McKenzie*, 268 F.R.D. 170, 173–74 (S.D.N.Y. 2010). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Faig v. Bioscrip, Inc.*, No. 13 Civ. 06922 (AJN), 2013 WL 6705045, at *3 (S.D.N.Y. Dec. 19, 2013).

Torppey's claims are typical of the claims asserted by the proposed Class. Like all members of the Class, Torppey alleges that Defendants made materially misleading misstatements and/or omissions in violation of the federal securities laws. Torppey, as did all of the members of the Class, transacted in ServiceMaster common stock during the Class Period in reliance on Defendants' alleged misstatements and omissions and was damaged thereby. Because Torppey's claims arise from the same course of events as do the claims of other Class members, the typicality requirement is satisfied. *See id*.

### (b) Torppey Satisfies the Adequacy Requirement of Rule 23

Torppey likewise satisfies the adequacy requirement of Rule 23. The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts in this District assess a movant's adequacy based on: "(1) the size, available resources and experience of the proposed lead plaintiff; (2) the qualifications of the proposed class counsel; and (3) any potential conflicts or antagonisms rising among purported class members." *In re Elan Corp. Sec. Litig.*, No. 1:08-cv-08761-AKH, 2009 WL 1321167, at *2 (S.D.N.Y. May 11,

2009) (citing *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, No. 08 MDL No. 1963(RWS), 2009 WL 50132, at *8 (S.D.N.Y. Jan. 5, 2009)).

Torppey will fairly and adequately represent the interests of the proposed Class. No antagonism exists between Torppey's interests and those of the absent Class members; rather, the interests of Torppey and Class members are squarely aligned. Torppey has also retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, *see infra* at Section II. In addition, Torppey understands his duties and obligations as a Lead Plaintiff under the PSLRA. *See* Certification, McConville Decl., Ex. A. Torppey suffered substantial losses due to Defendants' alleged misconduct and, therefore, has a sufficient interest in the outcome of this case to ensure vigorous prosecution of this action. Finally, there is no proof that Torppey is "subject to unique defenses that render such plaintiff incapable of representing the class," because no such proof exists. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accordingly, Torppey satisfies the adequacy requirement.

### III. TORPPEY'S SELECTION OF LEAD COUNSEL MERITS APPROVAL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001) (stating that "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). Consistent with Congressional intent, a court should not disturb the lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the plaintiff class." *See* H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734.

Here, Torppey has selected the law firm of Labaton Sucharow to represent the Class. Labaton Sucharow has excelled as lead counsel in numerous actions on behalf of defrauded investors, including noteworthy cases in this District. For example, Labaton Sucharow served as

lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors, and secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.), in which the Firm served as co-lead counsel. Labaton Sucharow also served as co-lead counsel in *In re Satyam Computer Services Ltd. Securities Litigation*, No. 09-md-2027 (S.D.N.Y.), through which it helped recover from the company and its auditors a total of $150.5 million for class members, and secured a $170 million recovery as co-lead counsel in *In re Fannie Mae 2008 Securities Litigation*, No. 08-cv-7831 (S.D.N.Y.). Labaton Sucharow presently serves as lead or co-lead counsel in several significant investor class actions. *See* Labaton Sucharow Firm Resume, McConville Decl., Ex. D.

In light of the foregoing, the Court should approve Torppey's selection of Labaton Sucharow as Lead Counsel for the Class. The Court can be assured that, by approving Torppey's choice of counsel, the Class will receive the highest caliber of representation.

## CONCLUSION

For the foregoing reasons, Torppey respectfully requests that the Court issue an Order (i) appointing Torppey as Lead Plaintiff for the Class; (ii) approving Torppey's selection of Labaton Sucharow as Lead Counsel for the Class; and (iii) granting such other relief as the Court may deem just and proper.

DATED: June 9, 2020                                           Respectfully submitted,

*/s/ Francis P. McConville*

**LABATON SUCHAROW LLP**
Christopher J. Keller
Eric J. Belfi
Francis P. McConville
David J. Schwartz
140 Broadway
New York, New York 10005

        Telephone: (212) 907-0700
        Facsimile: (212) 818-0477
        ckeller@labaton.com
        ebelfi@labaton.com
        fmcconville@labaton.com
        dschwartz@labaton.com

*Counsel for Lead Plaintiff Movant Scott Torppey and Proposed Lead Counsel for the Class*